UNITED STATES of America, Plaintiff–Appellee,

v.

Christopher MIMS and Robert Schuh, Defendants–Appellants.

Nos. 00–3693, 02–2810.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 11, 2003.\*

Decided Feb. 12, 2003.

Rehearing En Banc Denied April 1, 2003.

---

\* After examining the briefs and records, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and records. *See* Fed. R.App. P. 34(a)(2).

Before EASTERBROOK, ROVNER, and EVANS, Circuit Judges.

## ORDER

In exchange for "gratuities" of cocaine, Robert Schuh allowed numerous drug dealers to conduct business out of his bar, Jocko's Rocket Ship. Schuh pleaded guilty to maintaining a drug house, 21 U.S.C. § 856(a)(1), and his initial prison sentence of 228 months' incarceration included an adjustment for being an organizer or leader. Schuh appealed, and we remanded his case for resentencing without the role-in-the-offense adjustment. *United States v. Schuh*, 289 F.3d 968, 973 (7th Cir.2002). The district court resentenced Schuh to 151 months' incarceration, a term at the high end of the applicable guideline range. Schuh appeals his new sentence, arguing that the district court imposed it in reliance on inaccurate information.

We have consolidated Schuh's appeal with that of a dealer who operated out of Jocko's, Christopher Mims. Mims pleaded guilty to conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and was sentenced to 121 months' incarceration. Mims challenges his sentence, raising several arguments regarding the district court's refusal to depart downward based on his substantial assistance to authorities. For the reasons that follow, we dismiss Schuh's appeal and affirm Mims's sentence.

## A. Robert Schuh

■ At Schuh's resentencing the district court determined that the applicable guideline range, without the role-in-the-offense adjustment, was 121 to 151 months' incarceration. After hearing arguments about where in that range to sentence Schuh, the district court imposed a sentence at the high end:

> [T]he Court believes that a sentence at the top of the guideline imprisonment range is warranted because the quantity of cocaine for which this defendant is

accountable falls near the top of the range, 43.4 kilograms, and because his conduct spanned an extensive period of time involving innumerable transactions. Such a sentence will provide specific and general deterrence and hold the defendant accountable.

> The Court notes that his sentence at the top of the guideline range will provide imprisonment greater than that of codefendants consistent with defendant's control, operation, and maintenance of the drug house, Jocko's Rocket Ship, the Court believing that without such a facility available this extensive drug trafficking could not have occurred.

Defense counsel objected, arguing that the district court's reliance on Schuh's control over Jocko's could be relevant only to prove that Schuh played a greater role in the offense than his codefendants. Counsel argued that this court rejected such a conclusion. The district court replied that Schuh's sentence complied with our earlier ruling:

> Well, the Court took those remarks [regarding Schuh's control over Jocko's] from Count 1 of the Superseding Indictment and I don't believe that there's anything in the dicta or direct ruling from the Seventh Circuit which suggests this Court not consider the Indictment. The remand was for sentencing without an adjustment for being an organizer or leader.

> . . . .

> I don't believe that the Court of Appeals can restrain a court from following the Indictment which has been pled to as guilty and the Court did ask questions and receive answers relating to that Superseding Indictment when it took the plea. And the Court believes it is appropriate that the defendant be sentenced for those reasons as enumerated, having done that with the assistance of

none other than the Indictment which was used in this matter, the very elements of the offense of keeping a drug house.

On appeal Schuh argues that the district court erred in considering his control over Jocko's when deciding where within the guideline range to sentence him. But "absent an error of law or misapplication of the guidelines, there is no appellate jurisdiction over a district court's choice of a sentence within an otherwise correct guideline range." *United States v. Byrd,* 263 F.3d 705, 707 (7th Cir.2001). A defendant, however, may challenge his sentence if the court relied on inaccurate information, *United States v. Polson,* 285 F.3d 563, 567 (7th Cir.2002); *United States v. Anaya,* 32 F.3d 308, 314 (7th Cir.1994), and that is the argument that Schuh purports to make here.

But in fact he makes no such argument. Schuh fails to identify any inaccurate information on which the district court relied and instead really contends that, by emphasizing his control over Jocko's, the district court inaccurately inferred that he played a greater role in the offense than his codefendants. But even if the district court made such an inference, it would not be contrary to our prior decision. All we concluded then was that Schuh did not satisfy the requirements for a § 3B1.1 adjustment. That did not preclude the district court from concluding that Schuh was more culpable than his codefendants, albeit to a lesser extent than required by § 3B1.1. *See* U.S.S.G. § 3B1.1, comment. (n.2) (explaining that, even though a defendant may not satisfy the requirements for a § 3B1.1 *adjustment,* an upward *departure* may be warranted when the defendant exercises management responsibility over property). Moreover, to the extent that Schuh relies on the shorter sentences of his codefendants in support of his argu-ment, we have held that "a disparity among co-defendants' sentences is not a valid basis to challenge a guideline sentence otherwise correctly calculated." *United States v. Simmons,* 218 F.3d 692, 696 (7th Cir.2000) (quotation marks and citation omitted). Thus, because Schuh's sentence falls within the applicable guideline range and because he fails to identify any inaccurate evidence on which the district court may have relied in selecting that sentence, we lack jurisdiction to review it.

## B. Christopher Mims

In Mims's plea agreement the government agreed to move for a downward departure pursuant to U.S.S.G. § 5K1.1 if Mims provided substantial assistance to authorities. A week before sentencing, the government filed its § 5K1.1 motion, accompanied by an affidavit of the prosecutor and two exhibits. Exhibit A was an eight-page FBI report of Mims's post-indictment proffer, and Exhibit B was the entire transcript of Mims's grand jury testimony. These exhibits detailed Mims's cooperation with the government.

Mims raises several arguments on appeal, and all but one relate to the district court's denial of the § 5K1.1 motion. Mims first argues that the district court did not consider the entirety of his cooperation, or, at a minimum, that it is unclear from the record that the court considered such evidence. Next, Mims argues that the district court should have held a hearing to consider the extent of his cooperation. He then argues that the government breached the plea agreement by failing to inform the district court about the entirety of his cooperation and by not objecting to his sentence. Finally, Mims argues that his counsel provided ineffective assistance in various respects regarding the § 5K1.1 motion and by failing to argue that his

criminal history category overstated the seriousness of his criminal background.

 Initially, we note that we lack jurisdiction to review a district court's refusal to depart from a guideline range if the court was aware of its discretion to depart and the sentence contains no legal error. *United States v. Bosque*, 312 F.3d 313, 318 (7th Cir.2002); *United States v. Crucean*, 241 F.3d 895, 898 (7th Cir.2001). There is no question that the district court here knew that it had the discretion to depart, and Mims's only allegation of legal error is that his sentence violated due process because the court did not have complete information regarding the extent of his assistance to authorities. Specifically, Mims alleges that the government did not provide the court with the FBI report of his proffer and the transcript of his grand jury testimony. Whether such an allegation raises a claim of legal error is questionable, but, even assuming that it does, Mims's claim is frivolous because the district court did have the FBI report and the grand jury transcript. The record establishes that the government included those documents as exhibits to its § 5K1.1 motion, and at sentencing the court specifically referred to Mims's grand jury testimony. Moreover, the documents were sent to this court as part of the record on appeal. Thus, we lack jurisdiction to review the district court's refusal to depart.

Two of Mims's other claims–that the court should have held a hearing to determine Mims's cooperation and that the government breached the plea agreement–also rely on his erroneous belief that the government did not provide the district court with the FBI report and the grand jury transcript. Thus, because the government did submit those documents to the district court, those claims have no merit. Moreover, we are puzzled by Mims's contention that the court did not hold a hearing to determine his cooperation with government. He had several opportunities at sentencing to argue for a § 5K1.1 departure, and he never requested an additional evidentiary hearing to present more evidence of his cooperation.

 Mims's remaining claim is that his counsel was ineffective because he failed to (1) provide the court with "crucial facts" regarding his cooperation; (2) object to the sentence because of the "missing" FBI report and grand jury testimony; (3) negotiate a provision in the plea agreement requiring the government to "enthusiastically argue" for a § 5K1.1 departure; and (4) argue that his Category IV criminal history score overstated the seriousness of past crimes. Mims raises this claim despite our hesitancy to review ineffective-assistance claims on direct appeal, rather than in a collateral attack where the record can be developed. *See, e.g., United States v. Farr*, 297 F.3d 651, 657 (7th Cir.2002). And even though a full evaluation of Mims's claim would require us to consider information not in the record, i.e., trial counsel's strategic decisions, we will address the claim now because Mims's new counsel raises it in his brief.

Attorneys provide ineffective assistance when their performance falls below an objective standard of reasonableness and the defendant suffers prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove prejudice the defendant must show "a reasonable likelihood that the outcome of the proceedings would have been different." *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir.), *cert. denied*, 536 U.S. 924, 122 S.Ct. 2592, 153 L.Ed.2d 781 (2002). A reasonable likelihood is "one sufficient to undermine confidence in the outcome." *Morris v. United States*, 264 F.3d 726, 727 (7th Cir.2001).

Mims's first two bases for his ineffective-assistance claim fail because they rely on his erroneous belief regarding the FBI report and grand jury transcript. Thus, he cannot even establish deficient performance, much less prejudice. Mims's remaining arguments fail because he cannot establish prejudice. First, it is questionable whether an attorney can bargain for a particular degree of enthusiasm from the government in making sentencing recommendations. *United States v. Benchimol*, 471 U.S. 453, 456, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985). In any event, an "enthusiasm" clause would not have mattered because the government informed the court of all of Mims's cooperation; the court was simply not persuaded, specifically noting that Mims's presentence report included a "substantial amount of information" that Mims did not provide to the grand jury.

Second, Mims cannot establish a reasonable likelihood that the district court would have departed because of his criminal history category. *See* U.S.S.G. § 4A1.3. Mims received seven criminal history points—five points for prior state offenses and two points for committing the current offense while on probation. He contends that Category IV overstates his criminal history because only one of his prior offenses was a felony and because his probation term was almost complete when he committed the current offense. But it is unlikely that the district court would have departed from Category IV in light of its comments regarding his criminal background:

> The Court notes the defendant has a prior felony conviction for drug distribution. He was placed on probation and did not use that opportunity to distance himself from this criminal activity. He has a prior citation and a criminal conviction for drug possession. Were it not

for his cooperation the Court would have imposed a sentence near the middle of the guideline range because that is particularly where not only the quantity of drugs is found but also the numerous transactions and the extended period of time in which Mr. Mims was involved in the conspiracy would have placed him.

Accordingly, Mims does not meet the second prong of the *Strickland* test, and his ineffective-assistance claim fails.

As a final matter, we deny Mims's motion (as well as his renewed motion) seeking to supplement the record with the FBI report and grand jury testimony. Those exhibits are already included in the sealed portion of the record on appeal.

For the reasons explained above, we DISMISS Schuh's appeal and AFFIRM Mims's sentence. We also DENY Mims's motions to supplement the record.